# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| **KENDRICK THOMPSON, #27744-078** | § | |
| | § | |
| VS. | § | **CIVIL NO. 4:21CV261** |
| | § | **CRIMINAL NOS. 4:17CR165(1),** |
| **UNITED STATES OF AMERICA** | § | **4:18CR93(2)** |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Kendrick Thompson ("Movant"), proceeding *pro se*, filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, challenging his Eastern District of Texas, Sherman Division conviction. The motion was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case pursuant to 28 U.S.C. § 636, and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to the United States Magistrate Judge. After a careful review of the case, the court recommends the § 2255 motion be denied.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Movant's § 2255 motion concerns two criminal cases in which Movant was convicted: conspiracy to possess with intent to distribute one (1) kilogram or more of heroin in Criminal No. 4:17CR165(1); and conspiracy to possess with intent to distribute four hundred (400) grams or more of heroin in Criminal No. 4:18CR93(2). The criminal cases were consolidated at sentencing, on appeal, and for the purposes of this § 2255 motion.

**Criminal No. 4:17CR165(1)**

In June of 2016, agents of the U.S. Drug Enforcement Administration ("DEA") in Dallas, Texas, began investigating drug trafficking activities of a Drug Trafficking Organization involved in the smuggling, processing, and distribution of methamphetamine from Mexico to the Dallas area.

1

Crim. ECF 1 (Dkt. #118 at 5).[1]  Carlos Gallegos ("Gallegos") was one of the targets of the DEA's investigation into methamphetamine smuggling.  It was learned that Gallegos was also involved in heroin trafficking.  *Id*. at 6.

On May 25, 2017, Movant arrived at Gallegos's home in Dallas in a vehicle driven by Tamiko Carroll ("Carroll").  Movant was seen entering the house with a bag and then leaving with the bag, which appeared to weigh more than upon arrival.  After he and Carroll left Gallegos's home, a police officer conducted a traffic stop on the vehicle.  When the vehicle stopped, Movant fled on foot carrying the bag.  He ran to an apartment complex where he dropped the bag.  Officers recovered the bag and found a plastic food container with 961.2 grams of black tar heroin inside.  While officers did not locate Movant at the time, they identified him by items left in the vehicle.  Although no details concerning any other transactions were received, the parties agreed Movant is responsible for one (1) kilogram or more of heroin.  *Id*.

On October 11, 2017, a grand jury in the Eastern District of Texas returned a two-count indictment against Movant and two co-defendants that charged Movant in Count Two – conspiracy to possess with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. § 846.  *Id*. at 5.  Movant was ultimately found and arrested for the offense.  On July 26, 2018, he pled guilty to Count Two of the indictment without a plea agreement.  *Id.*

---

[1] When referring to documents in the first of the underlying criminal cases, the court will cite to it as Crim. ECF 1, followed by the docket number, i.e., Crim. ECF 1 (Dkt. #118).  When referring to documents in the second of the underlying criminal cases, the court will cite to it as Crim. ECF 2, followed by the docket number, i.e., Crim. ECF 2 (Dkt. #134). When referring to documents in the instant § 2255 civil action, the court will cite to it simply by the relevant docket number, i.e., (Dkt. #1).

Additionally, only one Presentence Report ("PSR") was completed, which includes both of the underlying criminal cases.  Accordingly, the court will cite only to the record of the first criminal case when citing to the PSR, Crim. ECF 1 (Dkt. #118).

**Criminal No. 4:18CR93(2)**

While in jail for the first offense, Movant's telephone calls were being recorded, which revealed the following conversations. Crim. ECF 1 (Dkt. #118 at 6). On May 18, 2018, Movant spoke to a man later identified as Arturo Casas, Jr. ("Casas") about the "car" business. Movant told Casas that someone would be calling him. He instructed Casas where to go to see someone who would "do the right thing." This person was later identified as Carroll. *Id*.

On May 21, 2018, Movant spoke again to Casas, and asked if he had contacted Carroll and if he remembered the "pharmacy" stuff, to which Casas replied that he did. Movant then said that everything will go exactly how it is supposed to go. He asked Casas to show Carroll how to "work on the cars" just as Casas had intended to show Movant. Additionally, Movant talked to Casas about taking a "pair" to Carroll. Casas said he would "make something happen." *Id*.

On May 29, 2018, the DEA office in El Paso, Texas, contacted the Dallas DEA office to let them know that Casas was transporting a large quantity of heroin to Fort Worth, Texas. Upon locating Casas's truck in Fort Worth, a traffic stop was conducted. While a canine officer alerted positive to narcotics in the truck, officers were unable to find anything and released Casas. *Id*. Agents were notified later that day that the heroin was concealed in the battery of the truck. Another traffic stop and search was conducted, and 654.2 grams of black tar heroin was found in the truck's battery. *Id*.

That same day, Movant and Carroll spoke via telephone while Movant was still in jail. Carroll said she did not like the way Casas was handling business. She later described how officers stopped a truck near her home and she watched as they searched Casas's truck, reporting that they found nothing at the time. *Id*. at 7. In June of 2018, officers arrested Carroll in her home and she admitted she was the intended recipient of the 654.2 grams of black tar heroin seized on May 29, 2018. She also said that Movant coordinated the delivery of the heroin, which she was then to sell.

*Id*.

On June 13, 2018, a grand jury sitting in the Eastern District of Texas returned a one-count indictment against Movant and two co-defendants, charging Movant in Count One with conspiracy to possess with intent to distribute 400 grams or more of a mixture or substance containing a detectable amount of heroin, in violation of 21 U.S.C. § 846. *Id.* at 5. On January 17, 2019, Movant pled guilty to Count One without a plea agreement. *Id.* (Dkt. ## 82, 84).

**Consolidation of Cases for Sentencing**, **Appeal, and Collateral Review**

On August 1, 2019, the District Court sentenced the Defendant on both cases. Crim. ECF 1 (Dkt. #133).[2] The Court sentenced Movant to 262 months' imprisonment in each case, to run concurrently. Crim. ECF 1 (Dkt. #127); Crim. ECF 2 (Dkt. #128). On direct appeal, Movant raised one issue challenging the District Court's decision not to award acceptance of responsibility points. *See* Crim. ECF 1 (Dkt. #141).[3] The United States Court of Appeals for the Fifth Circuit ("Fifth Circuit") held that the District Court did not err by refusing to award Movant three points credit for acceptance of responsibility, and affirmed his sentence. *Id*. at 3. It noted, "Because [Movant] engaged in conduct inconsistent with acceptance of responsibility, the district court's refusal to award him any credit was not without foundation." *Id*.

In the instant § 2255 motion, Movant asserts he is entitled to relief based on ineffective assistance of counsel in two instances. (Dkt. #1). Specifically, he claims his trial counsel's unkept promise caused him to plead guilty, which resulted in an invalid guilty plea. He also claims his appellate counsel was ineffective for failing to challenge on appeal the two points added to his

---

[2] One sentencing hearing was conducted for both criminal cases. Accordingly, the transcript from the sentencing hearing is identical in both cases. For purposes of this Report and Recommendation, the court will cite only to the record of the first criminal case, Crim. ECF 1 (Dkt. #133).

[3] The Fifth Circuit considered both criminal cases in one appeal, issuing only one opinion for both cases. For purposes of this Report and Recommendation, the court will cite only to the first case, Crim. ECF 1 (Dkt. #141).

offense level for his leadership role in the second case, Crim. No. 4:18CR93(2). The Government filed a Response, claiming Movant fails to show a constitutional violation, and is entitled to no relief. (Dkt. #8). Movant did not file a Reply.

## II. STANDARD FOR FEDERAL HABEAS CORPUS PROCEEDINGS

As a preliminary matter, it should be noted that a § 2255 motion is "fundamentally different from a direct appeal." *United States v. Drobny*, 955 F.2d 990, 994 (5th Cir. 1992). A movant in a § 2255 proceeding may not bring a broad-based attack challenging the legality of the conviction. The range of claims that may be raised in a § 2255 proceeding is narrow. A "distinction must be drawn between constitutional or jurisdictional errors on the one hand, and mere errors of law on the other." *United States v. Pierce*, 959 F.2d 1297, 1300-1301 (5th Cir. 1992) (*citations omitted*). A collateral attack is limited to alleging errors of "constitutional or jurisdictional magnitude." *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991). Conclusory allegations, which are unsupported and unsupportable by anything else contained in the record, do not raise a constitutional issue in a habeas proceeding. *Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983).

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Movant asserts he is entitled to relief based on ineffective assistance of counsel. A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction requires the defendant to show the performance was deficient and the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Id*. at 700. A movant who seeks to overturn his conviction on the grounds of ineffective assistance of counsel must prove his entitlement to relief by a preponderance of the evidence. *James v. Cain*, 56 F.3d 662, 667 (5th Cir. 1995). The standard requires the reviewing court to give great deference to counsel's performance, strongly presuming

counsel exercised reasonable professional judgment. *Strickland*, 466 U.S. at 690. The right to counsel does not require errorless counsel; instead, a criminal defendant is entitled to reasonably effective assistance. *Boyd v. Estelle*, 661 F.2d 388, 389 (5th Cir. 1981).

A movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Movant must "affirmatively prove," not just allege, prejudice. *Id*. at 693. If he fails to prove the prejudice component, a court need not address the question of counsel's performance. *Id*. at 697. When a movant pleads guilty, as in this case, he must also show that, but for trial counsel's alleged deficient performance, he would not have pled guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 57-59 (1985); *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000) (requiring defendant to show a reasonable probability that, but for counsel's allegedly erroneous failure, he would have insisted on trial).

The Fifth Circuit has held that to prevail on a claim of ineffective assistance of counsel on appeal, the petitioner must make a showing that, had counsel performed differently, there would have been revealed issues and arguments of merit on the appeal. *Sharp v. Puckett*, 930 F.2d 450, 453 (5th Cir. 1991), *citing Strickland*, 466 U.S. at 694. In a counseled appeal after conviction, the key is whether the failure to raise an issue worked to the prejudice of the defendant. *Sharp*, 930 F.2d at 453. This standard has been affirmed by the Supreme Court. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000) (holding that the petitioner must first show that his appellate attorney was objectively unreasonable in failing to find arguable issues to appeal, and also a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief raising these issues, he would have prevailed on his appeal). *See also Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001).

Furthermore, an appellate counsel's failure to raise certain issues on appeal does not deprive

an appellant of effective assistance of counsel where the petitioner did not show trial errors with arguable merit. *Robbins*, 528 U.S. at 285. Appellate counsel is not required to consult with his client concerning the legal issues to be presented on appeal – an appellate attorney's duty is to choose among potential issues, using professional judgment as to their merits – every conceivable issue need not be raised on appeal. *Jones v. Barnes*, 463 U.S. 745 (1983).

**A.      Unkept Promise**

Movant was represented by Camille Knight ("Counsel") both at trial and on appeal. He first claims Counsel was ineffective during the plea negotiation phase, and that Counsel's unkept promise induced him to plead guilty. Specifically, Movant asserts that Counsel promised him that he would receive a lessor sentence if he rejected the Government's plea offer and entered an open plea without a plea agreement. (Dkt. #1-1 at 7). Movant states that Counsel told him to reject the Government's plea agreement because it held him accountable for a larger quantity of drugs. *Id*. Noting that a sentence is affected by the quantity of drugs, Counsel advised Movant to plead guilty to an open plea and he would still receive the three points for acceptance of responsibility for pleading. *Id*.

A defendant may seek habeas relief on the basis of an unkept promise by proving (1) the exact terms of the alleged promise, (2) exactly when, where, and by whom the promise was made, and (3) the precise identity of an eyewitness to the promise. *United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir. 1998). In this case, Movant wholly fails to meet his burden. He fails to provide anything in support of this assertion except for his own conclusory self-serving statements, which are insufficient to entitle him to habeas relief. *Ross*, 694 F.2d at 1011-12; *Koch v. Puckett,* 907 F.2d 524, 530 (5th Cir. 1990) (conclusory allegations on a critical issue are insufficient to raise a constitutional issue).

7

A review of the transcript from the plea hearing in his first criminal case shows that Movant spoke with Counsel about the facts of the case and any defenses he may have to the charges. Crim. ECF 1 (Dkt. #132 at 8). He affirmed that he was satisfied with the representation and the advice received from Counsel in connection with the case as well as his decision to enter an open plea. *Id*. Movant understood that his sentence would be not less than ten years and not more than life imprisonment. *Id.* at 11. He also understood that he would be sentenced by a federal district judge who would look at, but was not obligated to follow, the federal sentencing guidelines. *Id.* at 13. Movant said that he had discussed how the sentencing guidelines might be used or applied in his case with Counsel, and understood that the district judge could sentence him up to the statutory maximum. *Id*. He understood that the guideline range for his case could be determined until after the PSR was completed. *Id*. Movant further affirmed that "any estimate that [Counsel] has given you, that the government has given you, that anyone has given you, that's all it is, is an estimate." *Id.* at 14. Finally, Movant understood that if the sentence he received was more severe than what he expected or hoped to receive, that he would be bound by his guilty plea and would have no right or opportunity to withdraw it. *Id*.

Additionally, Movant confirmed that no person had attempted to force, threaten, coerce, or in any way make him plead guilty. *Id.* at 15. He stated that he was pleading guilty of his own free will because he was actually guilty of the offense. *Id*. at 16. Movant confirmed that everything in the Factual Basis was true and correct. *Id.* at 19.

At the beginning of the plea hearing in his second criminal case, it was discussed that Movant had sent a letter to the court asking for appointment of new counsel. Crim. ECF 2 (Dkt. #134 at 2-3). However, Movant then stated that he wanted Ms. Knight (Counsel) to continue to represent him.

*Id*.  Movant said that he had no concerns "about pressing forward and entering a plea here today." *Id*. at 10.  He confirmed that he was "fully satisfied with the representation and the advice . . . received in connection with [his] case as well as with [his] decision to enter an open plea here today." *Id*. at 10-11.  He fully understood the range of penalties and consequences of pleading guilty. *Id*. at 14.  He also understood that he would be sentenced by a federal district judge who would look at, but was not obligated to follow, the federal sentencing guidelines.  *Id.* at 15.  Movant confirmed that he discussed these matters with Counsel including that the federal district judge could sentence him up to the statutory maximum. *Id*. at 15.  Movant understood that the guideline range for his case could not be determined until after the PSR was completed. *Id*.  He further affirmed that any estimate that Counsel, the Government or anyone else had given him was just that - an estimate. *Id*. at 16.  Finally, Movant understood that if the sentence he ultimately received was more severe than what he expected or hoped to get, that he would remain bound by his plea, and would have no right to withdraw it. *Id*.  Movant again confirmed that nobody had attempted to force him, threaten him, or coerce him into pleading guilty. *Id.* at 17-18.

Solemn declarations in open court carry a strong presumption of verity. *United States v. Lampazianie,* 251 F.3d 519, 524 (5th Cir. 2001) (quoting *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).  While a guilty plea may be invalid if induced by a defense counsel's unkept promises, "a defendant ordinarily will not be heard to refute [his] testimony given at a plea hearing while under oath." *Cervantes*, 132 F.3d at 1110.

At the close of both plea hearings, the Magistrate Judge noted that Movant was competent, had received assistance of counsel, understood the trial rights he was waiving, and had been advised and understood the charge to which he pleaded guilty as well as the full range of penalties and

9

consequences associated with those charges. Crim. ECF 1 (Dkt. #132 at 22); Crim. ECF 2 (Dkt. #134 at 23).

Furthermore, in the Factual Basis filed in both of his criminal cases, Movant stated, "I have read this Factual Basis and the Indictment and have discussed them with my attorney. I fully understand the contents of this Factual Basis and agree without reservation that it accurately describes the events and my acts. Crim. ECF 1 (Dkt. #96 at 2); Crim. ECF 2 (Dkt. #84 at 2). Likewise, in the Findings of Fact filed in both criminal cases, the United States Magistrate Judge concluded:

> [Movant] is fully competent and capable of entering an informed plea, [Movant] is aware of the nature of the charges and the consequences of the plea, and the plea of guilty is made freely, knowingly, and voluntarily. Upon addressing [Movant] personally in open court, the undersigned determines that [Movant's] plea is knowing and voluntary and did not result from force, threats, or promises.

Crim. ECF 1 (Dkt. #97 at 2); Crim. ECF 2 (Dkt. #85 at 2). In short, the record directly contradicts Movant's assertion. Movant's guilty plea was knowing and voluntary.

In cases where the record establishes that the defendant understood the nature of the charge against him and the direct consequences of his act, the rudimentary demands of a fair proceeding and a knowing, voluntary plea are satisfied. *Wright v. United States*, 624 F.2d 557, 561 (5th Cir. 1980). Movant fails to show that he did not understand the nature of a constitutional protection that he was waiving or that he had "such an incomplete understanding of the charges against him that this plea cannot stand as an admission of guilt." *James*, 56 F.3d at 666. The Fifth Circuit has held that a defendant's testimony at the plea colloquy that no one attempted in any way to force him to plead guilty carries a strong presumption of verity. *United States v. Abreo*, 30 F.3d 29, 31 (5th Cir. 1994). If a defendant understands the nature of the charges against him and the consequences of his plea,

yet voluntarily chooses to plead guilty, the plea must be upheld on federal review. *United States v. Wilkes,* 20 F.3d 651, 653 (5th Cir. 1994); *Diaz v. Martin*, 718 F.2d 1372, 1376-77 (5th Cir. 1983).

Furthermore, Movant fails to show that, but for Counsel's alleged deficient performance, he would have taken his chances at trial. *Hill* , 474 U.S. at 57-59; *Strickland,* 466 U.S. at 694. While he claims he would have gone to trial, he provides only his conclusory statement to that effect, which is insufficient. *Koch,* 907 F.2d at 530.

Movant further complains that he received no benefit from his open plea of guilty since he received the top range of his sentencing range - 262 months. (Dkt. #1-1 at 10). The record shows, however, that had Movant not been conducting drug business from jail, he likely would have received the three acceptance of responsibility points, which would have lowered his sentencing range. Counsel's advice to plead guilty would reasonably take into consideration that, because a defendant is pleading guilty, he would receive the acceptance of responsibility points. Additionally, the District Court assessed a leadership role to Movant based on the phone call recordings that showed Movant was continuing his drug business from jail, resulting in two more points being added to the offense level.

The record does not reveal one instance in which Movant asserted that Counsel promised him a lesser sentence. However, the record clearly reveals that Movant was fully apprised and acknowledged his understanding of the guideline range. He also understood that, until the PSR was completed, he would not know the recommended sentencing range. Movant understood that a federal district judge would be consulting the sentencing guidelines, but that they are not mandatory. He understood that the district judge could depart from the sentencing range and sentence him up to the statutory maximum – life imprisonment in Movant's case.

In sum, Movant fails to show that he pled guilty because of an unkept promise from Counsel. *Cervantes,* 132 F.3d at 1110. Movant's guilty plea was knowing and voluntary. He fails to show that, but for Counsel's alleged deficient performance, the outcome would have been different. *Strickland*, 466 U.S. at 694. He also fails to show that, but for Counsel's errors, he would have not pled guilty but proceeded to trial. *Hill*, 474 U.S. at 57-59. This issue is without merit.

**B.     Failure to Challenge Leadership Role on Appeal**

Movant next claims that Counsel, on appeal, should have challenged the two points added to his offense level that were assessed for his leadership role in the second criminal case, Criminal No. 4:18CR93(2). (Dkt. #1-1 at 10). Movant argues that there is nothing in the record showing that he supervised any others while he was in jail. *Id*. at 12.

A movant cannot succeed in an ineffective assistance of counsel claim by making conclusory allegations that counsel failed to file motions, make objections, or to follow his instructions. *United States v. Demik*, 489 F.3d 644, 647 (5th Cir. 2007). Movant must specify what actions Counsel should have taken and how they would have changed the outcome of the case. *Id.* Furthermore, a movant is not deprived of effective assistance of counsel for counsel's failure to raise certain issues on appeal where the movant does not show trial errors with arguable merit. *Robbins*, 528 U.S. at 285.

The U.S. Sentencing Guidelines Manual states:

Based on the defendant's role in the offense, increase the offense level as follows:

(a) if the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.

(b) if the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.

> (c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

U.S.S.G. § 3B1.1(a)-(c).

As discussed, the record clearly shows that Movant was directing Casas and Carroll in various drug transactions from his jail cell. Nonetheless, Counsel objected to the leadership role enhancement at the sentencing hearing, asserting the evidence did not support it. *See* Crim. ECF 1 (Dkt. #133 at 7). In response, the Government noted that Movant negotiated with persons in Mexico, he negotiated delivery, and he gave directions to Carroll as to what to do with the heroin once it reached her. Movant told Carroll where to get the money to pay for the drugs. *Id.* at 7. Movant was the leader of the transaction as well as the organization in the sense that "he had the working knowledge of how this was going to be done. He had the contacts to get it done. He negotiated and arranged for the delivery for it to get done." *Id.* at 8.

The District Court overruled Movant's objection, noting, "It's clear that [Movant] orchestrated this whole thing and he made all the arrangements from jail." *Id.* "I certainly think he was the leader. Well, he was a supervisor as compared to the other participant, Ms. Carroll, and he told her what to do and where to arrive and he orchestrated getting the drugs from the El Paso area." *Id.*

The record contradicts Movant's claim that there was insufficient evidence to support his leadership role enhancement. The evidence was more than sufficient to determine that Movant was an organizer, leader, manager, or supervisor in the criminal activity. Accordingly, Movant has not shown that, had counsel performed differently, there would have been revealed issues and arguments of merit on the appeal. *Sharp*, 930 F.2d at 453; *Strickland*, 466 U.S. at 694. Movant fails to show the trial court erred concerning the leadership role enhancement; thus, Counsel's failure to raise it

on appeal did not deprive Movant of effective assistance of counsel. *Robbins*, 528 U.S. at 285. This issue is without merit.

## IV. CONCLUSION

Movant has not shown that, but for Counsel's alleged deficient performance during the plea stage, the result of the proceedings would have been different. *Strickland*, 466 U.S. at 694. He fails to show that his guilty plea is invalid, based on an unkept promise from Counsel. *Cervantes*, 132 F.3d at 1110. Likewise, Movant fails to show that, but for Counsel's performance in not challenging the enhancement for his leadership role, he would have prevailed on appeal. *Robbins*, 528 U.S. at 285. Finally, Movant fails to show that, but for trial counsel's alleged deficient performance, he would not have pled guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 59. Movant fails to meet his burden in each of his issues; accordingly, the motion should be denied.

## V. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a proceeding under § 2255 "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B). Although Movant has not yet filed a notice of appeal, it is respectfully recommended that the court, nonetheless, address whether he would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (A district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a [movant] relief is in the best position to determine whether the [movant] has made a substantial showing of a denial of a constitutional right on the issues before the court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A certificate of appealability may issue only if a movant has made a substantial showing of

the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected constitutional claims on the merits, the movant must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*; *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003). When a district court denies a motion on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue when the movant shows, at least, that jurists of reason would find it debatable whether the motion states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

In this case, it is respectfully recommended reasonable jurists could not debate the denial of Movant's § 2255 motion on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *See Miller-El v. Cockrell*, 537 U.S. 322, 336-37 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it is recommended the court find Movant is not entitled to a certificate of appealability.

## VI.   RECOMMENDATION

It is recommended the above-styled motion for relief under 28 U.S.C. § 2255 be denied and this case be dismissed with prejudice. It is further recommended a certificate of appealability be denied.

Within fourteen days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)( C). To be specific, an objection must identify the specific finding or

recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superceded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 14th day of March, 2024.**

_____
AILEEN GOLDMAN DURRETT
UNITED STATES MAGISTRATE JUDGE